IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEITH HEIKEN**<br>1108 Witco Street<br>Dixon City, PA 18519<br><br>*Plaintiff*,<br><br>vs.<br><br>**SOUTHWESTERN ENERGY**<br>10000 Energy Drive<br>Spring, TX 77389<br><br>-and-<br><br>**DAVID BOWMAN**<br>10000 Energy Drive<br>Spring, TX 77389<br><br>*Defendants.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through undersigned counsel, hereby files the following Complaint against Defendants:

### INTRODUCTION

1. Plaintiff, Keith Heiken, (hereinafter "Plaintiff" or "Ms. Frank"), brings this action against his former employer, Southwestern Energy (hereinafter "Defendant Southwestern) to redress violations by Defendant Southwestern of

sexual harassment, gender discrimination, retaliation and the creation of a hostile environment and for violations of the Pennsylvania Human Relations Act ("PHRA").

2. Plaintiff also files a separate action for battery against David Bowman for nonconsensual harmful and offensive touching of Plaintiff.

## JURISDICTION AND VENUE

3. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

4. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

5. The United States District Court for the Middle District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

6. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

7. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

9. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII of the Civil Rights Act for the following reasons:

10. On or about August 7, 2017, Plaintiff filed a timely Charge of Discrimination ("Charge") with the Pennsylvania Office of the Equal Employment Opportunity Commission ("EEOC") against Defendant Southwestern alleging

gender discrimination, sexual harassment, retaliation and hostile environment which Charge the EEOC officially docketed as Charge No. 530-2017-03540.

11.  A notice of a Right to Sue in this matter was received, at Plaintiff's request, from the EEOC on March 26, 2018.

12.  Plaintiff's EEOC Complaint was also cross-filed with the Pennsylvania Human Relations Commission pursuant to the work-sharing arrangement between the EEOC and the PHRC. Plaintiff intends to amend this Complaint, when permitted by statute, to assert causes of action under the Pennsylvania Human Relations Act, 43 P.S. Section 955(a), upon the expiration of the applicable period of time for investigation and authority from the PHRC.

13.  This Complaint has been timely filed within ninety (90) days of receipt of the Right to Sue notice from the EEOC.

14.  Plaintiff has thus far exhausted the administrative remedies available to him. In addition, all necessary administrative prerequisites to the filing of this Complaint have appropriately occurred and have been satisfied.

**PARTIES**

15.  All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

16. Keith Heiken is 42 years old, a citizen of the Commonwealth of Pennsylvania who was employed with Defendant Southwestern from October 29, 2012 until June 27, 2017, when he was pre-textually terminated from employment.

17. Southwestern Energy is an independent energy company, primarily engaged in natural gas and crude exploration, and production mainly in the Shales of Fayetteville, Arkansas and the Marcellus Shale in Pennsylvania.

18. Defendant, David Bowman, (hereinafter referred to as Defendant Bowman) is an employee of Defendant Southwestern and a manager who was similarly situated to Plaintiff.

## FACTUAL BACKGROUND

19. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

20. On May 8, 2017 while Plaintiff was speaking to the Production Superintendent and his foreman, Defendant Bowman came up behind Plaintiff and grabbed his buttocks invasively.

21. The next day Plaintiff met with Greg Osbourne (HR)(Osbourne) and Justin Moore (Moore) (North Easter Pennsylvania Area Manager) and complained of Bowman's sexual harassment and battery.

22. Messrs. Moore and Osbourne opined that all Bowman needed was some verbal counseling.

23. Plaintiff strongly disagreed, in part because Bowman had done the same thing to an employee, Jason Petlock, a few months before.

24. After Plaintiff disclosed Jason Petlock as one of Bowman's victims, Moore and Osbourne interviewed both Mr. Petlock and Bowman.

25. Plaintiff meanwhile, clarified that a mere counseling of Bowman was not an appropriate sanction given the seriousness of the infraction.

26. Two days later, Plaintiff was informed that, despite Bowman's admissions, Bowman was nonetheless 'counseled' and a letter placed in his personnel file.

27. Plaintiff expressed his profound dissatisfaction at this outcome and informed Mr. Osbourne that he was going to consult an attorney.

28. Later that day, Plaintiff called Darin Coble ('Coble') (Senior HR Business Partner) to make additional complaints against Bowman which included, but were not limited to, putting his arm around Plaintiff, pushing Plaintiff in the ribs, touching Plaintiff and invading Plaintiff's personal space in a belligerent manner.

29. Coble confirmed that other personnel had been terminated for similar actions and promised to escalate the matter to Mitzi Burkinshaw (HR Director).

30. On May 11, 2017, Plaintiff informed Matthew Briggs (Briggs), Plaintiff's supervisor, of all that had happened.

31. Briggs said he had heard a little about it because Plaintiff had threatened to hire a lawyer. Apparently, that threat had elevated the matter within the company. Briggs told Plaintiff he was "extremely happy" with Plaintiff's job performance.

32. The next day, Plaintiff started his vacation but it was blighted by Plaintiff's physical symptoms, brought on by the stress and anxiety caused by Bowman and the indifference of Defendant Southwestern to its own procedures and precedent.

33. On May 15, 2017, during Plaintiff's vacation, Plaintiff finally connected with Mitzi Burkinshaw and communicated once again, his profound dissatisfaction with the meager discipline meted out to Bowman.

34. Plaintiff told Ms. Burkinshaw that if a woman had been so assaulted, Bowman's punishment would have been far more severe.

35. When Plaintiff brought up the past conduct of Bowman, Ms. Burkinshaw, manifesting both clear gender bias and poor judgment, said; "you're a big guy, why didn't you tell David to stop?"

36. Ms. Burkinshaw was clearly implying that Plaintiff should have handled the matter by resorting to physical violence.

37. Ms. Burkinshaw, following up on her 'blame the victim' strategy, told Plaintiff that Plaintiff should have complained earlier to Justin Moore ('Moore').

38. Plaintiff then informed Ms. Burkinshaw that Moore was biased because he and Bowman were friends so complaining to him would do Plaintiff little good.

39. Ms. Burkinshaw acknowledged that they were indeed friends.

40. Plaintiff reiterated that as far as he was concerned, the matter was unresolved and, thereby, continued to cause Plaintiff significant stress and anxiety.

41. Ms. Burkinshaw said Southwestern would take the necessary steps to see what could be done but refused to give any details.

42. On May 31, 2017, Plaintiff was asked by David Dell'Osso (Vice President of NEPA region) to attend a meeting.

43. They went to an empty office and Mr. Dell'Osso informed paste, for the first time that Bowman and Greg Osbourne were on their way. This made Plaintiff extremely uncomfortable and he asked permission to leave, which was given.

44. Later in the day, Plaintiff assured Briggs and Osbourne that the Bowman situation would not affect his productivity or his ability to do his job.

45. In response, Briggs accused Plaintiff of missing an opportunity by walking out of the meeting and failing to show commitment to Mr. Dell'Osso.

46. Plaintiff had been was given permission to leave and he was never informed what kind of 'commitment' Plaintiff owed to Mr. Dell'Osso or why he owed it.

47. Plaintiff informed Briggs that, as far as Weston was concerned, the Bowman issue was closed.

48. Less than a week later, on June 6, 2017, at 9 AM, Plaintiff was asked by Justin Moore to go to the Hampton Inn in Tunkhannock because, apparently, Moore was concerned with "some relationships in the office and wanted HR to talk to people."

49. Plaintiff met with Drew Metz and another HR representative.

50. Once again, Plaintiff expressed how Moore played favorites and how his relationship with Bowman had adversely affected the work environment.

51. Once again, Plaintiff reflected on Bowman's bullying and harassment and voiced concern with Ms. Burkinshaw's reference to Plaintiff's size and the implication he should have used physical force in response to Bowman's battery.

52. Finally, Plaintiff a confided that he feared retaliation from Southwestern because of his sexual harassment and gender discrimination complaints.

53. Plaintiff was told to call HR personnel if that should happen.

54. Plaintiff was assured he would get feedback after the 'investigation' was complete, which would take a couple of weeks.

55. No feedback was ever received.

56. Instead, on June 27, 2017, first thing in the morning, Briggs and Coble showed up to Plaintiff's office.

57. After being assured that Plaintiff would not be the victim of any retaliation, Plaintiff was summarily fired.

58. Briggs told Plaintiff that he had lost his "leadership ability". However, to other employees, Briggs said Plaintiff was terminated because he was not a "team player."

## COUNT I
### Title VII Sex / Sexual Harassment / Hostile Work Environment / Retaliation
*Plaintiff v. Southwestern*

59. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

60. The foregoing conduct by the Defendant constitutes unlawful discrimination against the Plaintiff on the basis of his sex.

61. The foregoing conduct by the Defendant constitutes an unlawful hostile work environment.

62. The foregoing conduct by the Defendant constitutes unlawful sexual harassment.

63. The foregoing conduct by the Defendant constitutes unlawful retaliation against Plaintiff for engaging in protected activity insofar as the adverse employment actions materially affected the compensation, terms, conditions, and/or privileges of Plaintiff's employment.

64. As a result of the Defendant's unlawful discrimination and retaliation, the Plaintiff has suffered damages as set forth herein.

## COUNT II
### Common Law Battery
*Plaintiff v. Bowman*

65. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

66. Defendant Bowman, acted by his own volition when he, without the Plaintiff's consent, offensively touched Plaintiff with intent to cause him harm.

67. As a direct and proximate result of Defendant Bowman's actions, Plaintiff has sustained the injuries, damages and losses set forth herein

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that the Court enter judgment in his favor and against each Defendant and that it enter an Order as follows:

a. The Defendant Southwestern is to be permanently enjoined from engaging in discrimination against the Plaintiff on any other basis prohibited under applicable law;

b. The Defendant Southwestern is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and is to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

c. The Defendant Southwestern is to be prohibited from continuing to maintain its unlawful policy, practice, or custom of discriminating against employees and is to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d. The Defendant Southwestern is to compensate the Plaintiff, reimburse the Plaintiff, and to make Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendant Southwestern's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded those benefits illegally withheld from the date the Plaintiff first suffered discrimination at the hands of the Defendant Southwestern or its agents until the date of verdict;

e. The Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by the Defendants' actions to the extent they are available as a matter of law;

f. The Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish the Defendants for their willful, deliberate, malicious and outrageous conduct and to deter the Defendants or other employers from engaging in such misconduct in the future;

g. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h. The Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

i. Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law and to reflect the tax consequences thereof;

j. The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure the Defendant does not engage – or ceases engaging – in unlawful retaliation against Plaintiff or other witnesses to this action;

k.     The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l.     Plaintiff demands trial by jury pursuant to Fed.R.Civ.P. 38 on all issues so triable.

Respectfully submitted,

KOLMAN ELY, P.C.

*/s/ W. Charles Sipio*
Timothy M. Kolman, Esquire (*pro hac vice forthcoming*)
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated:    March 26, 2018